UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL EUGENE GRIMAGE,

      Plaintiff,

v.                                                          Case No. 3:23-cv-893-MMH-SJH

CAPTAIN LEVAI, et al.,

      Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Michael Eugene Grimage, an inmate of the Florida penal system, initiated this action on July 25, 2023, by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[1] under 42 U.S.C. § 1983. In the Complaint, he names the following Defendants: (1) Captain Levai, (2) Sergeant Hoffman, and (3) Sergeant Willis. See Complaint at 2–3. Grimage alleges Defendants used excessive force in violation of the Eighth and Fourteenth Amendments. See id. at 3–5.

This matter is before the Court on Defendants' Motion to Dismiss (Motion; Doc. 18). In support of the Motion, Defendants have submitted

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

exhibits. <u>See</u> Docs. 18-1 through 18-13. Grimage filed a response in opposition to the Motion. <u>See</u> Plaintiff's Response to Defendants' Motion to Dismiss (Response; Doc. 21). The Motion is ripe for review.

## II. Grimage's Allegations[2]

Grimage alleges that on November 26, 2022, Captain Levai kicked him and "slammed" him to the ground while he was handcuffed. Complaint at 5. He asserts that Sergeant Hoffman hit him, and he was "picked up in [a] four man carry; then thrown back in cell where [he] hit [his] head on toilet/sink and then right arm got caught in guardrail of bunk and shoulder was seriously injured." <u>Id.</u> According to Grimage, Sergeant Willis participated in the use of force. <u>Id.</u> Grimage also asserts that Sergeant Willis drugged him on November 24, 2022, and placed him in confinement "for this planned attack." <u>Id.</u> From the use of force, Grimage alleges he sustained a head injury that "causes black out spells and headaches," a shoulder injury, and hernia pain.[3] <u>Id.</u> He requests monetary damages. <u>Id.</u>

---

[2] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Grimage, and accept all reasonable inferences that can be drawn from such allegations. <u>Holland v. Carnival Corp.</u>, 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

[3] Grimage asserts he "was kicked in groin area where [he] had hernia surgery 2 months prior." Complaint at 5.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant

3

is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in

order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

## IV. Summary of the Arguments

In their Motion, Defendants argue that Grimage's claims against them should be dismissed because he failed to properly exhaust his administrative remedies, and they are entitled to qualified immunity. See Motion at 10–16. Grimage responds that he exhausted his administrative remedies before he filed the Complaint, and Defendants are not entitled to immunity. See Response at 2–5.

## V. Analysis

### A. Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab.

5

Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[4] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner such as Grimage, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

> opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[5] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Grimage] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with

---

[5] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020). In evaluating whether Grimage has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need

not name any particular defendant in a grievance in order to properly exhaust his claim." <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1218 (11th Cir. 2010).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the

9

institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated

list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### 3. The Parties' Positions Regarding Exhaustion

Defendants argue that Grimage failed to properly exhaust his administrative remedies. Motion at 12–13. According to Defendants, Grimage submitted no appeal grievances about the November 26, 2022 use of force, and as such, Grimage failed to exhaust his administrative remedies because he did not complete the FDOC's three-step grievance process. See id. at 12. In support of their argument, Defendants attach a grievance appeal log, see Doc. 18-1, as well as the grievance appeals that Grimage submitted between December 20, 2022, and May 8, 2023, see Docs. 18-2 through 18-7.

11

Defendants further contend although Grimage identifies specific grievances in his Complaint that he submitted about the use of force, those grievances fail to satisfy the exhaustion requirement. Motion at 13. They attach those grievances and the responses to them as exhibits to their Motion. See Docs. 18-8 through 18-13. The Court summarizes the grievances and responses below.

The record reflects that Grimage submitted an informal grievance (log #201-2212-0103) on December 8, 2022, stating:

> [Redacted] still going to crucifix you. On 12-7-22, between 1:00-3:00p Cpt. Levai sped by cell door, banged, and said and those D.Rs are going to stick. . . .
>
> Until today (12-8-22) when I got my property (after 9 days of being [redacted]) Cpt. Levai had instructed staff in H-dorm to not give me reading and writing material, as a form of retaliation for reporting staff abuse, as I told you all he would. All this is on video (I don't know if audio could hear) but this is becoming very stressful due to my vulnerability of being amongst my attacker on a daily basis (Cpt. Levai, Ofc. Hickox, and Ofc. Hoffman during p.m. which cause me to be afraid to take shower) Please, investigate and report this constant harassment from abusers.

Doc. 18-13. A Columbia Correctional Institution (Columbia CI) official denied the grievance, noting "Captain Levai was interviewed and denies all allegations made against him." Id.

12

Grimage then submitted a direct grievance (log #23-6-00347) to the FDOC Secretary on December 19, 2022. Doc. 18-10 at 2. In the direct grievance, Grimage stated that he submitted an emergency grievance to a classification officer about the "threats to cause harm to [him] and denying [redacted] sustained during staff abuse on 11-26-22." Id. He also noted prison officials retaliated against him on December 19, 2022. Id. The FDOC Secretary returned the grievance without action:

> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your appeal at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.
>
> Your request for administrative appeal is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, which states, "each grievance must address only one issue or complaint." Your current request for administrative appeal addresses more than one issue and/or complaint.
>
> Furthermore, if you fear staff, you need to file an informal to the Colonel. The Colonel should have the opportunity to address these issues regarding staff at the institution.
>
> When making allegations of staff misconduct, you need to provide all pertinent information, such as names, dates, times, places, and specific details, for a

13

proper review.

Id. at 1.

Grimage filed an informal grievance (log #201-2301-0142) on January

10, 2023, stating:

> Colonel [redacted] filed an Incident Report on the 11-26-22 staff abuse . . . . I have not heard of outcome, nor spoke with Investigator, but almost CM'ed [sic] under pretense. What's going on?
>
> Also, on 12-7-22, I submitted formal grievance (See CLO collect grievance between 7:00a-11:00a H-1207). asserting (what I could remember/relayed by witnesses) that on 11-26-22, time approximate between 5:00p-7:00p I attempted to getaway [sic] from hallucinated demonic figure. Cpt. Levai grabbed me and yelled "Mother F[*****]" and kneed me in groin (where I'd recently had [redacted]) like UFC fighter, threw me to the ground. Then Sargeant [sic] Hoffman came down with knee in same [redacted] and also landed blow to head. I attempted to jump from 2nd floor to escape pain, but lifted and aggressively thrown back in cell 2219 . . . causing my head to strike toilet, back hitting edge of steel bunk, and jamming my shoulder in the process. And on 12-9-22, I submitted Informal #201-2212-0105 and a formal requesting retention of video for further autherative [sic] review, pursuant to . . . Rule Ch. 33-602.210 of which I have not received Response to either formal said. I was told by Secretary's Office to submit this to you to be investigate to also prevent further misconduct.

Doc. 18-11. Citing Rule 33-103.014(1)(a), a Columbia CI official returned the

grievance without action because it addressed more than one issue or

complaint. Id.

On January 22, 2023, Grimage filed a formal grievance (log #2301-201-

102):

> Plaintiff is appealing [sic] Informal Grievance # 201-
> 2301-0142, due to Responding official (sexton) lack of
> comprehension or recognition, that this complaint is
> solely addressing the 11-26-22 staff assault.
>
> CLEARLY, Plaintiff asked about the Incident Report
> submitted and grievances inquiring about the
> investigation and preservance [sic] of evidence,
> proving staff assault on 11-26-22. Plaintiff explained
> his condition on 11-26-22 and the results thereof.
>
> AT NO TIME in Grievance #201-2301-0142 do [sic]
> Plaintiff [raise] any other issue(s) NOT concerning
> Defendants' attack on Plaintiff on 11-26-22[.]
>
> It appears this is a[n] intentional delay to obstruct
> justice and to conceal evidence for the furthering of
> Administrative Review.
>
> Remedy Sought: Preserve evidence (video/audio) of
> attack by staff on Plaintiff (11-26-22) and update
> Plaintiff on the investigation incident by [redacted].
> These actions make me want to continue pursuit of
> justice. I am not one of the
> incompetence[sic]/illiterates[.]

Doc. 18-12 at 2. The Columbia CI Warden responded in pertinent part:

15

> The response you received within Informal Grievance Log# 201-2301-0142 was reviewed and determined to adequately address your issue.
>
> 201-2301-0142 was answered in error but was answered the correct action. Informal Grievance should have been returned for being non-compliance [sic] with Chapter 33-103.014(1)(v) asking questions, seeking assistance.
>
> Based on the foregoing, your request for administrative remedy is denied.

Id. at 1.

Grimage appealed to the FDOC Secretary (log #23-6-06533), stating:

> Complainant is submitting this Grievance to the Office of the Secretary, due to this Institution's failure to address dire issue(s) timely.
>
> In Grievance #23-6-00347, Representative A. Johns instructed me to file an "Informal Grievance" to the Colonel. Then I submitted Grievance #201-2301-0142 and someone "other than the Colonel" advertently returned grievance because I explained details of 11-26-22 staff assault committed against me and grievances not responded to (pertaining to assault) submitted to grievance box in confinement. Then I submitted formal grievance #2301-201-102, and I have been denied a response as of this 20th day of February.
>
> Also, due to assault on 11-26-22, I've submitted [redacted] and Grievance #201-2212-0270 to [redacted] concerning [redacted] 11-26-22) and possible [redacted] to newly [redacted] and [redacted] and said I'll be [redacted] again, but have not [redacted] as of this day (2-20-23).

16

Subsequently after my release from confinement (1-10-23), I was given a [redacted] later they know I have a [redacted], then placed in an unassigned room G-4205L for 8 days (1-10-23 thru 1-17-23), then forced to sleep on dayroom table for over 9 hours (because they REFUSED to assign me to a new [redacted], because they assigned someone else to G-4205L, during a lockdown (stabbing)) forcing me to call TIPS and Florida Cares, due to this mistreatment! Then on 1-30-23, RE-CONFINING me for incident on 11-26-22 and denying me an opportunity to call and assist Private Investigator  (hired by family to help me get out of prison on actual innocence claim) telling me "They don't care about my legal issues in person and telling in Grievance # 2302-201-072, that denying phone call to legal advisor(s) is no "irreparable harm" when my family is paying a $100 an hour for services! Preposterous!

WHEREFORE, Complainant is asking for your assistance in these matters, caused by reporting staff assault that evident [sic] (video/audio) on 11-26-22.

Doc. 18-9 at 2. The FDOC Secretary responded:

Your request for administrative appeal is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, which states, "each grievance must address only one issue or complaint." Your current request for administrative appeal addresses more than one issue and/or complaint.

If you do not understand the grievance procedure, you should seek the assistance of another inmate or staff member.

17

> The grievance/appeal process is not to be utilized for correspondence purposes.
>
> Based on the foregoing information, your appeal is returned without action.

Id. at 1.

Lastly, on May 8, 2023, Grimage submitted an appeal grievance (log #23-6-15090) to the FDOC Secretary. Doc. 18-8 at 2. He stated that he submitted a formal request on April 17, 2023, to have video and audio evidence of various assaults—including the November 26, 2022 use of force—retained, but he never received a response. Id. The FDOC Secretary returned Grimage's grievance without action because it addressed more than one issue or complaint, and the FDOC's records did not reflect that Grimage filed a formal grievance on or after April 17, 2023. Id. at 1.

In response to Defendants' Motion, Grimage contends that he exhausted his administrative remedies because he "proceeded through the proper channels of the grievance process, all the way to the Secretary's Office, twice." Response at 4.

### 4. Turner Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Grimage's

allegations. See Whatley, 802 F.3d at 1209. If Grimage's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See id.

The Court now turns to the allegations in the parties' respective filings concerning Grimage's exhaustion efforts. Defendants assert that "none of Plaintiff's pertinent grievance appeals have been related to the underlying use of force," and as such, they fail to satisfy the exhaustion requirement. Motion at 12. According to Defendants, the grievances that Grimage references in his Complaint similarly fail to satisfy the exhaustion requirement. Id. at 13. Grimage responds that he has proceeded "through the proper channels of the grievance process . . . concerning the violations alleged in the Complaint." Response at 4. Accepting Grimage's view of the facts as true, the Court cannot dismiss the Complaint at the first step of the Turner analysis.

### 5. Turner Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the Turner analysis. The Court finds that Defendants have failed to meet their burden of establishing that Grimage did not properly exhaust his administrative remedies. See Turner, 541 F.3d at 1082 ("The defendants bear the burden of

proving that the plaintiff has failed to exhaust his available administrative remedies."). First, while Defendants argue that Grimage failed to exhaust his administrative remedies because he did not file any pertinent grievance appeals, this argument, by itself, is unavailing. The FDOC has a three-step grievance process that concludes with the inmate's submission of a grievance appeal. However, an inmate need not proceed to the appeal step if he or she received an approved informal or formal grievance. See, e.g., Dombrowski v. Wilson, No. 3:21-cv-1199-BJD-PDB, 2023 WL 2403857, at *3 (M.D. Fla. Mar. 8, 2023)[6] (finding that the plaintiff exhausted his administrative remedies because his informal grievances were approved); see also Tierney v. Hattaway, No. 3:20-cv-5738-LAC-ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022) ("Given that [the plaintiff's] informal grievance was 'approved,' and the matter referred to the [OIG], it would have been pointless for [him] to appeal by filing a formal grievance.").

Considering the record before the Court, it is unclear if Grimage was required to submit a grievance appeal in order to exhaust his administrative

---

[6] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

remedies. Defendants provide neither declarations nor grievance logs demonstrating that Grimage did not submit any relevant informal or formal grievances that prison officials approved. In this context, the Court does not conclude that Grimage failed to exhaust his administrative remedies simply because he did not submit a relevant grievance appeal.

To the extent Defendants argue the grievances that Grimage listed in his Complaint also do not demonstrate proper exhaustion, the Court is not convinced that those grievances represent the entirety of Grimage's relevant exhaustion efforts. Defendants fail to offer evidence—or even assert—that Grimage has filed no other informal or formal grievances regarding the use of force. Indeed, Grimage only listed these grievances in response to the complaint form's prompt to "set forth any additional information that is relevant to the exhaustion of your administrative remedies." Complaint at 8. Grimage responded, "My request for video and audio retention under procedure 602.033, in November mental health staff submitted a[n] incident report, after seeing footage of prison officials assaulting while handcuffed and in a[n] unstable state." Id. Grimage then listed specific grievance numbers. Id. Neither the Complaint, nor even Grimage's Response, suggest that these grievances represent the totality of his efforts to exhaust his administrative

remedies as to the use of force. <u>See</u> Complaint at 6–8; Response at 2–4. And, of course, Grimage was not required to specially plead or demonstrate exhaustion in the Complaint. <u>See</u> <u>Jones</u>, 549 U.S. at 216.

Moreover, in the identified grievances, Grimage seemingly refers to other grievances regarding the incident that he submitted. For instance, in informal grievance log #201-2301-0142, Grimage states he submitted a formal grievance on December 7, 2022, regarding the use of force. <u>See</u> Doc. 18-11. In appeal grievance log #23-6-06533, Grimage references a grievance (log #201-2212-0270) that he submitted about the use of force. <u>See</u> Doc. 18-9 at 2. However, Defendants again provide neither logs nor declarations to clarify whether these grievances exist and, if so, how the FDOC responded to them. In light of the outstanding questions regarding Grimage's exhaustion efforts, the Court denies the Motion as to this issue without prejudice to Defendants reasserting it in a properly supported motion for summary judgment.

## B. Qualified Immunity

Defendants alternatively assert that they are entitled to qualified immunity. Motion at 13–15. The Court notes that although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." <u>St. George v.</u>

22

Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting St. George, 285 F.3d at 1337). The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) (internal quotation marks and alteration omitted).

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the

scope of his or her discretionary authority. <u>Maddox v. Stephens</u>, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. <u>See id.</u> To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established...in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), <u>overruled in part on other grounds by</u> <u>Pearson</u>, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings. <u>Maddox</u>, 727 F.3d at 1120–21 (citation omitted).

<u>Jones v. Fransen</u>, 857 F.3d 843, 850–51 (11th Cir. 2017); <u>see</u> <u>King v. Pridmore</u>, 961 F.3d 1135, 1142 (11th Cir. 2020). The Court notes that where the alleged conditions are particularly egregious, a general constitutional law already

identified in decisional law may be applicable such that a reasonable officer would know that the egregious conditions violate the Constitution. <u>Taylor v. Riojas</u>, 592 U.S. 7, 8–9 (2020).

Defendants argue that they are entitled to qualified immunity because Grimage's allegations are conclusory, and as such, his claims must fail. Motion at 14. According to Defendants, Grimage "has not provided any background to justify his claims that the use of force was excessive, rose to the level of a constitutional violation, or that Defendants acted in a manner outside the course and scope of their positions." <u>Id.</u> at 14–15. Grimage responds that Defendants are not entitled to immunity because "video footage . . . will show that: while handcuffed his back [sic], in boxer briefs, being non-combative; Plaintiff was brutalized by way of excessive and unnecessary use of force by the Defendants." Response at 4.

Defendants are not entitled to qualified immunity at this stage of the proceedings. In the Complaint, Grimage alleges that Captain Levai kicked him and slammed him to the ground while he was handcuffed, and Sergeant Hoffman hit him. <u>See</u> Complaint at 5. According to Grimage, Sergeants Willis and Hickox "were involved" in the use of force. <u>Id.</u> He further asserts that he was picked up in a four-man carry—presumably by Captain Levai, Sergeants

Hoffman, Willis, and Hickox—and thrown into his cell. Id. As a result, he hit his head on the sink and caught his right arm in the bunk's guardrail. Id. Grimage sustained significant injuries to his head, groin, and shoulder from the use of force. Id.

Accepting Grimage's allegations with respect to each Defendant and considering those allegations independently, the Court finds that Grimage has alleged facts sufficient to state plausible excessive force claims against each Defendant. Grimage asserts each Defendant participated in the use of force while he was handcuffed. Grimage also alleges he suffered physical injuries as a result of the use of force. Because Grimage has stated plausible Eighth Amendment claims against each Defendant, they are not entitled to qualified immunity at this stage of the litigation. See Skrtich v. Thornton, 280 F.3d 1295, 1303 (11th Cir. 2002) ("[G]overnment officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated."), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009). Accordingly, Defendants' Motion is due to be denied.

26

Therefore, it is now

**ORDERED:**

1.      Defendants' Motion to Dismiss (Doc. 18) is **DENIED without prejudice** to Defendants reasserting their arguments in a properly supported motion for summary judgment.

2.      Defendants shall respond to the Complaint (Doc. 1) **no later than August 12, 2024**. Upon the filing of their answers, the Court, by separate Order, will set deadlines for discovery and the filing of dispositive motions.

        **DONE AND ORDERED** at Jacksonville, Florida, this 19th day of July, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 7/9
c:    Michael Eugene Grimage, #415545
      Counsel of record

27