UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL EUGENE GRIMAGE,

Plaintiff,

v. Case No. 3:23-cv-893-JEP-SJH

CAPTAIN LEVAI, *et al.*,

Defendants.

---

**ORDER**

**I. Status**

Plaintiff, an inmate of the Florida Department of Corrections, is proceeding *pro se* on a Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 1) against three officers (Defendants Levai, Hoffman, and Willis) based on an incident that occurred at Columbia Correctional Institution on November 26, 2022. Plaintiff alleges Defendants used excessive force on him while he was handcuffed and "in a mentally incompetent state." Doc. 1 at 4. Before the Court is Defendants' Motion for Summary Judgment (Doc. 55). Plaintiff opposes the motion (Doc. 58).

**II. Legal Standard**

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) … requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable

inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III. Analysis

### A. Defendants' Motion

Defendants invoke qualified immunity, arguing there is no evidence they violated Plaintiff's clearly established constitutional rights. *See* Doc. 55 at 7–21.

#### i. Relevant Law

"In order to receive qualified immunity, [a] public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted). There is no dispute that Defendants were acting within the scope of their discretionary duties at the time of the incident. Where, as here, it is undisputed that Defendants were acting within the scope of their discretionary authority, the burden shifts to Plaintiff to prove that Defendants "(1) violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Plaintiff must satisfy both prongs to survive a qualified-immunity defense. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019).

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987). At the same time, it is well understood that prison guards, who are charged with maintaining order and protecting inmates and staff, may use force when necessary. *See Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991). Accordingly, courts must construe an inmate's right to be free from cruel and unusual punishment consistent with a prison official's obligation to ensure a safe and secure institution. *Ort*, 813 F.2d at 321–22.

A prisoner against whom force is used to restore order demonstrates an Eighth Amendment violation "*only* if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'" *Williams*, 943 F.2d at 1575 (quoting *Whitley*, 475 U.S. at 320−21 (emphasis in original)). Assessing whether an officer used more force than necessary to quell a disturbance or regain control of a prisoner requires courts to consider various factors, including the need for force, the extent of force used in relation to the prisoner's conduct, the threat of harm the prisoner posed to others, whether the officer tried to "temper the severity of a forceful response," and the

injuries inflicted. *See id.*; *Whitley*, 475 U.S. at 321; *see also Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). A prisoner's lack of an injury is not dispositive but can be "evidence of the kind or degree of force that was used by [an] officer." *Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021) (citing *Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021)).

In applying the *Whitley* factors, courts should "give a wide range of deference to prison officials acting to preserve discipline and security." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). Corrections officials are not required to "convince every inmate that their orders are reasonable and well-thought out," and "[c]ertainly...are not required to do so where an inmate repeatedly fails to follow those orders." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (alteration in original), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). As such, "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley*, 475 U.S. at 322. A case should not go to the jury "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.*

**ii. Defendants' Evidence**

In support of their Motion, Defendants rely on the transcript of Plaintiff's deposition and video evidence. *See* Doc. 55 at 1–5, 8–9, 13-15, 17-19; *see also* Docs. 55−1, 55−2. According to Plaintiff's deposition, he was placed in a confinement cell on November 24, 2022, after receiving a disciplinary charge. Doc. 55-1 at 10−12. Plaintiff was having "psychological" issues, including blacking out and hallucinating. *Id*. Plaintiff believed these issues were caused by a "cigarette" with some "substance" in it that he smoked and was given to him by another inmate. *Id*. at 9-11, 13. He declared a psychological emergency on the 24th, was seen by a nurse, and then he was placed in another cell under suicide watch. *Id*. at 17−18.

Before the incident involving Defendants on November 26, 2022, Plaintiff had no prior incidents with Defendants. *Id*. at 13−14. On the day of the incident, Defendants ordered Plaintiff to come to the cell door and submit to handcuffing through the food flap tray, then move to the back of the cell. *Id*. at 14−15. After he was handcuffed with his hands behind his back, Plaintiff became frightened and believed the Defendants were going to harm him after he heard Defendant Levai say, "make it fast" and mention an incident that happened in 2015 involving another officer. *Id*. at 14−20. Because of Defendant Levai's comments, and because Defendants were about

to place another inmate in Plaintiff's cell who was handcuffed with his hands in the front, Plaintiff decided he would move to the front of the cell to be visible to the surveillance camera. *Id*. at 17.

When Defendants opened the cell door, Plaintiff exited the cell "so [he] could be on camera[.]" *Id*. at 20. He claimed that he just stood outside his cell door when Defendant Levai kicked him in the groin, he was taken down to the ground, then carried back to and thrown into his cell. *Id*. Before he was thrown into his cell, Plaintiff admits he resisted the officers because one of them was twisting his ankle, and he did not want to go into the cell with another inmate who was handcuffed in the front while Plaintiff was handcuffed behind his back. *Id*. at 21.

Once Plaintiff was back in the cell, Defendants removed his handcuffs. *Id*. at 21–22. A nurse came to the cell and told Plaintiff she would take care of him. *Id*. at 22. Plaintiff was escorted to an office where the nurse evaluated him. *Id*. Plaintiff did not recall falling off his chair while in the office. *Id*. at 23. But he was "quite sure" he blacked out while in the office because he had "black[ed] out" several times between November 24 and November 26. *Id*. Plaintiff claimed that Defendants' use of force on November 26 caused injuries to his shoulder and back and caused a "sticky liquid substance" to drip from his anus frequently. *Id*. at 24–25.

Video evidence from a hand-held camera, filed under seal, captured the incident on November 26. *See* Doc. 55-2. The footage shows Defendants approach Plaintiff's cell and converse with Plaintiff while another officer is off to the side with the other inmate. *Id.* at 6:44-9:25. Plaintiff submits to handcuffing through the food flap on the cell door. He then moves to the back of the cell and turns to face the wall after being ordered. When Defendants open the cell door, the fourth officer begins to move the other inmate toward the cell. The other inmate is handcuffed with his hands behind his back. Plaintiff then quickly moves from the back of the cell to outside the cell. All the Defendants grab Plaintiff just after he exits the cell. Plaintiff resists the officers, Defendant Levai uses his knee to strike Plaintiff once in his groin or thigh, and the Defendants take Plaintiff down to the floor. Plaintiff continues to resist and slides both his legs through the protective railings on the second floor. Defendants and another officer hold Plaintiff down to gain control of him and prevent him from falling through the railings to the first floor. All four officers lift Plaintiff from the ground by his arms and legs and carry him back to his cell. However, Plaintiff continues to resist and puts one leg on the ground. The officers maneuver Plaintiff toward the cell opening and push Plaintiff into the cell. Plaintiff falls to the floor but quickly stands up and moves toward the opening of the cell. However, Defendant Levai closes the

cell door before Plaintiff can exit the cell.

The remainder of the video shows the officers removing Plaintiff's handcuffs through the food flap, two nurses arriving at the cell and talking to Plaintiff through the cell door, officers escorting Plaintiff to medical, Plaintiff sitting in the medical room until he falls out of his chair to the floor, officers helping Plaintiff to stand then escorting him back to a new cell, officers placing a suicide shroud on Plaintiff and placing him in his cell and removing his handcuffs through the food slot in the door. *Id*. at 9:26-44:02.

**iii. Plaintiff's allegations**

In his Complaint, Plaintiff alleges that Defendants used excessive force because while he was handcuffed and "in a mentally distraught state," Defendant Levai kicked him, they threw him to the ground, Defendant Hoffman punched him, and they threw him back in his cell, causing him to injure his head and shoulder. Doc. 1 at 5. Plaintiff provides no witness statement or other evidence with his response to Defendant's motion for summary judgment. Doc. 58. Rather, he admits that "out of fear . . . [he] hurriedly made an exit from his assigned cell[.]" *Id*. at 3. He also asserts that when he exited the cell, the Defendants "immediately took full control of" him, and he just stood against the wall "without being combative towards the Defendants." *Id*. He further admits that when the Defendants took him to the

ground, he "attempted to evade" them by "clamping [his] legs to [the] guard rail" because he was in "severe pain[.]" *Id.* at 4. Finally, Plaintiff states that after Defendants lifted him and carried him to his cell, they "violently threw" him into the cell. *Id.*

**iv. Conclusions**

Because Defendants invoke qualified immunity, and it is undisputed they were acting within the scope of their discretionary authority at the relevant time, Plaintiff has the burden to demonstrate that Defendants violated his constitutional rights. He has not carried his burden. Plaintiff's various contentions about what occurred do not align with the video evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

First, Plaintiff contends in his Response to Defendants' Motion that there was no reason for Defendant Levai to strike him with his knee or for Defendants to take him to the ground because he was handcuffed, just stood against the wall, and was not "combative." But the video evidence confirms Defendants' assertion that they used reactive force because Plaintiff ran out of his cell and struggled with the Defendants from the time he ran out until

they pushed him back into his cell. *See* Doc. 55 at 8–10. The Defendants' use of force was not excessive merely because Plaintiff was handcuffed. *See Buckley v. Haddock*, 292 F. App'x 791, 795-96 (11th Cir. 2008) (deploying a taser three times on a handcuffed suspect who was resisting arrest and disobeying commands was not objectively unreasonable).

Second, the video footage belies Plaintiff's allegation that Defendant Hoffman punched him. And even if Defendant Hoffman struck Plaintiff one time, Plaintiff fails to allege facts that show where he was hit, that the punch was unnecessary to gain his compliance, and that the punch caused any injury. *See, e.g., Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1318 (S.D. Fla. 2012) (holding officer's punches to the plaintiff's ribs were not excessive where the plaintiff was resisting arrest, and a reasonable officer could believe the punches were necessary to coax a suspect into surrender).

Third and finally, Plaintiff contends Defendants "violently" threw him back into his cell. However, the video evidence blatantly contradicts Plaintiff's contention. Because Plaintiff was resisting the officers as they were carrying him, escaped the grasp of one officer, and was standing on one leg facing the open cell door and refusing the orders to enter his cell, Defendants pushed Plaintiff into the cell, causing him to fall to the floor. Under those circumstances, pushing Plaintiff into his cell was not an excessive use of

force. *See, e.g., Miles v. Murra*, 2006 WL 456269 (S.D. Tex. Feb. 23, 2006) (finding no excessive force where inmate was sprayed with pepper spray, put in a choke-hold, pushed, and kneed in the back to restore order after inmate refused officer's order to return to his cell).

When assessing an Eighth Amendment excessive force claim, "the core judicial inquiry" is "whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Considering the summary judgment evidence, the Court finds Defendants' use of force against Plaintiff was minimal and tempered and applied in good faith to restore internal order and discipline. The video evidence aligns with Defendants' description of events and contradicts Plaintiff's allegations about what occurred. His self-serving allegations are insufficient to overcome a qualified immunity defense on summary judgment. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) ("[T]o defeat a motion for summary judgment, [the non-moving party] must adduce specific evidence from which a jury could reasonably find in his favor; '[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient.'" (third and fourth alterations in original) (quoting *Anderson*, 477 U.S. at 248)).

Given the reliable video evidence that contradicts Plaintiff's statements

in most material respects, the Court concludes this is the type of factual dispute envisioned by the Supreme Court as insufficient to proceed to a jury. *See Scott*, 550 U.S. at 380 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'").

In accordance with the foregoing, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment (Doc. 55) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of Defendants, terminate any pending motions as moot, and close the file.

**DONE and ORDERED** at Jacksonville, Florida, on August 26, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

TpaP-3
cc: Plaintiff, *pro se*
Counsel of Record